[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Plaintiff, F. Donald Bush, appeals the judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants, Dictaphone Corporation ("Dictaphone") and Lew Agin. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Plaintiff began working for Dictaphone as a sales representative in April 1976. He continued in that position until he was promoted to Region Manager in 1979. As Region Manager, plaintiff had supervisory responsibility for several sales representatives. In May 1990, Dictaphone upgraded the title of his position and that of his four peers to Region Vice President. Throughout the 1980's, plaintiff's company performance reviews were generally quite positive.
 {¶ 3} In February 1992, Charlene Malone, Vice President, Sales for plaintiff's division, sent plaintiff an inter-office letter requesting a meeting to discuss an action plan to reverse a downward trend in the performance of his region. Plaintiff responded to her letter with what Malone considered to be an "inappropriate and insubordinate" memorandum. (Malone affidavit at paragraph 3.) In that memorandum, dated February 7, 1992, plaintiff indicated, among other things, that he did not wish to discuss the development of an action plan, that he did not "like the sounds of [Malone's] letter" and would not accept further letters concerning an action plan. (Exhibit A to Malone's affidavit.)
 {¶ 4} In March 1992, Malone received several "disturbing" telephone calls from some of the sales representatives who reported to plaintiff, each of whom independently complained of plaintiff's harassing behavior and his verbally abusive language. At Malone's behest, the sales representatives contacted Kim Carpenter,[1] Vice President, Human Resources, to express their concerns about plaintiff's ongoing harassing and abusive behavior. According to Carpenter, the sales representatives claimed that plaintiff exhibited unpredictable, erratic behavior, including severe mood swings, had a tendency to "fly off the handle" and react badly to unexpected circumstances, used foul language, made negative comments relative to his direct supervisors, and belittled people in public meetings. (Carpenter affidavit, paragraph 8.) Plaintiff's subordinates also claimed that plaintiff would threaten their income and territory size if they did not do what he perceived to be in compliance with his direct orders. According to plaintiff, one of his area managers, Carla Miller, reported to him during this time period that Malone had told her that plaintiff had "psychological-type problems" that "could be used against him." (Plaintiff's 12/14/99 deposition at 52.)
 {¶ 5} In late March 1992, Carpenter, Malone and Gordon Moore, Vice President of plaintiff's sales division, met with plaintiff to discuss the allegations against him. Plaintiff justified his actions as "good management." (Carpenter affidavit at paragraph 9.) Based upon his tenure and past sales success, plaintiff was given an opportunity to adjust his management style in lieu of being terminated immediately. Plaintiff was informed, however, that if he reverted to unacceptable managerial tactics or attempted to retaliate against any of his subordinates, he would be terminated. According to plaintiff, Carpenter asked him at this meeting if he was seeing a psychologist, and Malone asked him if he had mental problems. (Plaintiff's 12/14/99 deposition at 66.) On March 31, 1992, Carpenter sent plaintiff a memorandum confirming what had been discussed in the meeting and setting forth an action plan for him. (Carpenter affidavit at paragraph 11, Exhibit A.)
 {¶ 6} No further problems with plaintiff's behavior were reported until November 1992, when Malone received a telephone call from one of plaintiff's subordinates, George Wallace, who claimed that plaintiff's harassing behavior had worsened. Malone informed Carpenter, who again contacted several of plaintiff's sales representatives, all of whom confirmed Wallace's reports. Thereafter, Malone and Carpenter met with David Nassef, Corporate Ombudsman for Pitney Bowes, Inc. ("Pitney Bowes"),[2] and requested that he conduct an independent investigation of the matter. According to Nassef, the concerns of Malone and Carpenter were twofold: (1) plaintiff had difficulty interacting with management, i.e., following directives and/or advice; and (2) many of plaintiff's subordinates were complaining about his abusive management style. After meeting with plaintiff's subordinates, Nassef reported that plaintiff was creating and fostering a hostile and intimidating work environment and recommended that plaintiff be removed from his supervisory position as Region Vice President.
 {¶ 7} Based upon Nassef's recommendation, plaintiff was removed as Region Vice President on January 8, 1993, for creating a hostile working environment, violating the March 31, 1992 performance letter, and conducting himself in a manner contrary to Dictaphone's value system. According to Carpenter, plaintiff's removal was necessary for the well-being of the employees who reported to him. In a follow-up letter dated January 8, 1993, plaintiff was offered a position as a sales representative in the Cleveland area. In the course of negotiations between plaintiff and Dictaphone regarding the sales position, plaintiff apparently inquired about other management opportunities within Dictaphone, averring that he did not fully understand why he had been removed as Region Vice President. In a letter dated February 2, 1993, Malone reiterated the reasons for his removal, citing the "extremely serious nature of the problems" brought about by his "hostile and inappropriate management style." (Nassef 6/19/00 deposition, Exhibit 9.) Malone further explained that it was plaintiff's failure to either perceive the extent of the problem and/or his unwillingness to correct the problem which prevented him from obtaining a management position at the present time. Malone also stated that if plaintiff wished to move into a management position in the future, he would need to demonstrate managerial abilities, including, but not limited to, an understanding of his development needs that were presently absent. Plaintiff ultimately accepted a non-supervisory position as hospital specialist in another division of Dictaphone and began working there on March 1, 1993. In that capacity, he reported to defendant Lew Agin, a District Manager.
 {¶ 8} In April 1994, Agin and Gil Kamenir, Region Sales Vice President, solicited guidance from Carpenter regarding plaintiff's increasingly hostile behavior and concerns about plaintiff being a possible threat to himself or co-workers. In particular, Agin sent an inter-office letter to Carpenter wherein he noted that one of his employees had expressed concern that plaintiff had "gone off the deep end" or "was in the process of having a breakdown" and that she feared for her safety as well as that of Agin and her co-workers. (Carpenter affidavit at paragraph 18, Exhibit B.) Carpenter referred the matter to the newly formed Pitney Bowes Corporate Prevention of Critical Incident Team ("PCI Team"), an ad hoc group formed in response to increasing incidents of workplace violence across the United States.
 {¶ 9} After viewing all the known circumstances of plaintiff's employment and behavior, the PCI Team determined that it would be an unacceptable risk to ignore the "overwhelming evidence of a disturbed individual." (4/7/95 affidavit of John Walker, Corporate Director of Security for Pitney Bowes and a member of the PCI Team, paragraph 40.) Accordingly, the PCI Team determined that it would be in the best interest of both plaintiff and Dictaphone for plaintiff to undergo a psychiatric evaluation with Dr. Howard Sokolov, a board certified psychiatrist. Agin and Nassef informed plaintiff of the PCI Team's recommendation. The psychiatric evaluation was made a condition of plaintiff's continued employment and was completed at Dictaphone's expense. Plaintiff was placed on personal leave pending completion of Dr. Sokolov's examination and evaluation. While plaintiff was on leave, the PCI Team arranged for the surveillance of plaintiff. The surveillance team was apprised that if plaintiff were to approach Agin's residence, endanger any Dictaphone employees, or cause damage to company property, the proper authorities should be notified.
 {¶ 10} Plaintiff was evaluated by Dr. Sokolov on April 6 and 26, 1994. In his May 4, 1994 report, Dr. Sokolov stated that plaintiff's personality pattern was consistent with "narcissistic personality disorder." Further, Dr. Sokolov opined as follows:
 {¶ 11} "Narrowly, Mr. Bush is seen fit to work if we are addressing only his ability to sell to customers * * *. However, in a practical sense, he probably cannot function in this role in the context of a corporate employee at Dictaphone. Each nuance of company policy, questioning, restrictions, etc., are seen as additional personal attacks on him, further humiliating him and angering him. * * * This type of rumination, along with an underlying seething anger felt as Mr. Bush described his treatment at the hands of the corporation is a major concern as to his future actions and involvement with the company. While it is unlikely that his rage will [be] expressed in physical actions and he made no threats to individuals or to the company, it is extremely likely that he will wage a war of vituperation, legal complaints, obstructionism, and pestering, to attempt to win against the corporation and in this way salvage some self esteem. * * *" (Carpenter affidavit, paragraph 20, Exhibit D, at 18-19.)
 {¶ 12} Dr. Marlene Kocan also evaluated plaintiff. In her April 27, 1994 report, Dr. Kocan stated, in pertinent part:
 {¶ 13} "On a superficial level [plaintiff] will appear to be unassertive and someone who will seek reassurance from others. * * * However, beneath this unassertive level of his functioning are high degrees of oppositionality and repressed anger which may erupt at times. Because he will express anger only rarely, due to his discomfort doing so, when he does express anger, others are likely to experience it as extremely inappropriate. * * *
 {¶ 14} "* * *
 {¶ 15} "Because of his high levels of underlying hostility and some suggestion that he may act on his hostility, caution should be exercised in dealing with this man. There is a poor prognosis for his ability to change and grow and to respond to any psychological intervention. * * *" (Carpenter affidavit, paragraph 20, Exhibit E, at 1-2.)
 {¶ 16} The PCI Team offered plaintiff the opportunity to be evaluated, at Dictaphone's expense, by a mental health professional of his own choosing and to submit the results of any evaluation. Plaintiff did not submit an independent mental health evaluation.
 {¶ 17} After reviewing plaintiff's employment history and the results of the psychiatric evaluations conducted by Drs. Sokolov and Kocan, the PCI Team recommended that plaintiff's employment be terminated. Kamenir and Carpenter agreed that it was in the best interest of Dictaphone and the employees to terminate plaintiff's employment effective June 10, 1994. According to Carpenter and Nassef, the decision was based upon plaintiff's actions and Dictaphone's belief, in addition to the recommendation of the PCI Team, that plaintiff could not function effectively within the workplace nor operate as a productive member of the Dictaphone team. The possibility of a physical altercation involving plaintiff and/or continued verbal harassment by plaintiff of his colleagues or supervisors was also cited as considerations in the termination.
 {¶ 18} On March 6, 1995, plaintiff filed a complaint in the Franklin County Court of Common Pleas against, among others, Dictaphone, alleging state claims for breach of contract, promissory estoppel, fraud, invasion of privacy, and infliction of emotional distress arising from his employment relationship with Dictaphone. Plaintiff's action was removed to the United States District Court for the Southern District of Ohio and was consolidated with two other complaints plaintiff had filed in the district court regarding his employment relationship. Plaintiff's consolidated cases contained not only the aforementioned state claims but, also, both state and federal claims for age discrimination, sex discrimination and retaliation. The district court retained jurisdiction over plaintiff's state claims, exercising its supplemental jurisdiction.
 {¶ 19} On July 9, 1997, the district court granted defendants' motion for summary judgment on all claims presented by plaintiff and, in the same opinion, denied plaintiff's motion for leave to amend his complaint to add a state claim of handicap discrimination. The district court's decision granting summary judgment was affirmed on appeal. Bush v. Dictaphone Corp. (C.A.6, 1998), 161 F.3d 363. Plaintiff did not appeal the district court's denial of his motion for leave to amend his complaint.
 {¶ 20} On April 24, 1997, plaintiff filed the instant action in the Franklin County Court of Common Pleas against Dictaphone and Agin, asserting state claims of handicap discrimination, retaliation, promissory estoppel, spoliation of evidence and invasion of privacy. Following the district court's grant of summary judgment in the federal case, defendants filed a motion for summary judgment in the state action, contending that all claims asserted by plaintiff were barred by the doctrine of res judicata. The trial court granted defendants' motion and dismissed all of plaintiff's claims. More specifically, the trial court found that the district court had dismissed plaintiff's claims of retaliation, promissory estoppel and invasion of privacy on their merits, and res judicata thus would bar the relitigation of those claims. The trial court further concluded that the district court's denial of plaintiff's motion for leave to amend his federal complaint to assert a claim of handicap discrimination constituted a judgment on the merits, and res judicata also barred that claim. Although the court did not specifically address the spoliation of evidence claim, the trial court apparently found that claim to be barred by res judicata, in that such claim could have been raised in the federal action but was not.
 {¶ 21} Plaintiff timely appealed the trial court's decision to this court, asserting only that the trial court improperly granted summary judgment on plaintiff's handicap discrimination claim. This court agreed, concluding that the trial court wrongly applied the doctrine of res judicata to plaintiff's handicap discrimination claim because the district court's denial of plaintiff's motion for leave to amend on jurisdictional grounds did not constitute a judgment on the merits under the principles of res judicata. Accordingly, that claim was remanded to the trial court for further proceedings. Bush v. Dictaphone, Inc. (Mar. 30, 1999), Franklin App. No. 98AP-585.
 {¶ 22} After further discovery on plaintiff's handicap discrimination claim, defendants filed a second motion for summary judgment. The trial court again granted summary judgment to defendants. In particular, the trial court found that plaintiff had failed to establish a prima facie case of handicap discrimination with regard to his 1993 demotion, but had established a prima facie case with regard to his 1994 termination. The court further found that the issue of whether defendants produced evidence of a legitimate, nondiscriminatory reason for terminating plaintiff's employment had been determined in defendants' favor in the federal action; thus, plaintiff was barred from re-litigating that issue under the doctrine of collateral estoppel. Plaintiff has timely appealed the trial court's judgment and advances the following three assignments of error for our review:[3]
 {¶ 23} "I. The trial court erred in granting defendants' motion for summary judgment against plaintiff's claim of disability discrimination.
 {¶ 24} "II. The trial court erred in overruling as moot plaintiff's motion to strike declarations and exhibits attached to defendant's motion for summary judgment and in failing to consider plaintiff's reply in support of his motion.
 {¶ 25} "III. The trial court erred in overruling plaintiff's motion to conduct telephonic depositions."
 {¶ 26} In his first assignment of error, plaintiff contends that the trial court erred in granting defendants' motion for summary judgment. Specifically, plaintiff contends that the trial court erred in determining that plaintiff did not establish a prima facie case of handicap discrimination with regard to his demotion in 1993 and in determining that he was collaterally estopped from relitigating whether defendants produced evidence of a legitimate, nondiscriminatory reason for its employment actions.
 {¶ 27} An appellate court reviews a trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that of the trial court. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107. Before summary judgment can be granted under Civ.R. 56(C), the trial court must determine that:
 {¶ 28} "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 29} Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 {¶ 30} Handicap discrimination in employment is prohibited by R.C. 4112.02, which read, at the time this case arose[4]
 {¶ 31} "It shall be an unlawful discriminatory practice:
 {¶ 32} "(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 33} To establish a prima facie case of handicap discrimination, the party seeking relief must establish: "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." Columbus Civ. Serv. Comm. v. McGlone (1998), 82 Ohio St.3d 569, 571, citing Hazlett v. Martin Chevrolet, Inc. (1986), 25 Ohio St.3d 279, 281. If the plaintiff establishes a prima facie case of handicap discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. Hood v. Diamond Products, Inc. (1996),74 Ohio St.3d 298, 302. "The employer's burden is only one of production, satisfied upon the presentation of an explanation legally sufficient to justify judgment for the employer." Kemo v. City of St. Clairsville (1998), 128 Ohio App.3d 178, 184. If the employer articulates a legitimate, nondiscriminatory reason for the action taken, the presumption of discrimination raised by the prima facie case is rebutted, and the employee's burden is to prove that the employer's stated reason is a pretext for discrimination. Hood, supra. The burden of persuasion remains at all times with the employee. Bullock v. Totes, Inc. (Dec. 22, 2000), Hamilton App. No. C-000269, citing Reeves v. Sanderson Plumbing Products, Inc. (2000), 530 U.S. 133, 120 S.Ct. 2097. In order to establish pretext, the employee must show that the employer's proffered reason is not worthy of credence or that discriminatory reasons "more likely" motivated the employer's decision. Bullock, supra.
 {¶ 34} At the time the instant case arose, R.C. 4112.01(A)(13) defined "handicap" as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.03(A)(16)(a)(ii) defined "mental impairment" as: "[a]ny mental or psychological disorder, including, but not limited to, mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities[.]" The Ohio Supreme Court has held that Ohio courts may look to cases and regulations interpreting the Americans with Disabilities Act ("ADA") for guidance in interpreting Ohio's anti-discrimination statutes. McGlone, supra, at 573.
 {¶ 35} While R.C. 4112.01(A)(13) includes "work" as a major life activity, the term is construed in the context of covering the most basic and fundamental of physical tasks in general, not specific jobs with specific employers. Kemo, supra, at 186.
 {¶ 36} Citing Section 1630.2(j)(3), Title 29, C.F.R. the McGlone court discussed what factors should be considered in determining whether an individual is substantially limited in the major life activity of working:
 {¶ 37} " `(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. ' " (Emphasis sic.)
 {¶ 38} The trial court found, and we agree, that because plaintiff specifically denied that he had any handicap while employed by Dictaphone (plaintiff's 12/14/99 deposition at 116), his claim for handicap discrimination can only be based on the "being regarded as having a physical or mental impairment" prong of R.C. 4112.01(A)(13).
 {¶ 39} In Maloney v. Barberton Citizens Hospital (1996),109 Ohio App.3d 372, 378, the court, quoting Section 1630.2(l), Title 29, C.F.R. (1993), recognized the three ways a plaintiff may demonstrate that he or she is "regarded as" having a physical or mental impairment:
 {¶ 40} "A plaintiff is regarded as having an impairment when [he or] she:
 {¶ 41} " `(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
 {¶ 42} " `(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
 {¶ 43} " `(3) Has [no impairment] * * * but is treated by a covered entity as having a substantially limiting impairment.' "
 {¶ 44} In the instant case, the trial court determined that plaintiff had failed to adduce any evidence that Dictaphone regarded him as handicapped at the time he was removed from his position as Region Vice President or that the action was based upon anything other than plaintiff's behavior and management style. Accordingly, the court found that plaintiff was unable to establish a prima facie case of handicap discrimination with regard to his demotion. Further, citing the April 4, 1994 letter from Agin to Carpenter and Walker's April 7, 1995 affidavit, the trial court determined that a reasonable fact finder could infer from such evidence that Dictaphone regarded plaintiff as having a mental impairment and that their so regarding him was a factor in the decision to terminate his employment in June 1994. Accordingly, the trial court found that plaintiff had established a prima facie case of handicap discrimination with regard to his termination.
 {¶ 45} We note that the trial court's determination as to whether or not plaintiff set forth sufficient evidence to establish a prima facie case of handicap discrimination with regard to his demotion and/or termination under the "regarded as" definition of handicap set forth in R.C. 4112.01(A)(13) does not include an analysis of the factors set forth in Maloney. We assume from the trial court's finding concerning plaintiff's specific denial of handicap that the court relied upon the third factor in the Maloney test. However, the decision leaves unclear whether the court found plaintiff to have established that he had no mental impairment, but was treated by Dictaphone as having a "substantially limiting impairment." Indeed, there is no discussion whatsoever concerning the "substantially limited in the major life activity of working" aspect of the first prong of a prima facie handicap claim. Further, there appears to be no consideration given to the third prong of the prima facie handicap claim; i.e, whether plaintiff, "though handicapped, [could] safely and substantially perform the essential functions of the job in question." In our view, some analysis of these issues is clearly required by the applicable statutes and case law.
 {¶ 46} Assuming, without deciding, however, that the trial court was correct in its determination as to whether or not plaintiff established a prima facie case of handicap discrimination with regard to his demotion and/or termination, we agree with the trial court's finding that the doctrine of collateral estoppel bars plaintiff from arguing that defendant did not produce evidence of a legitimate, nondiscriminatory reason for its employment actions or that plaintiff demonstrated that defendant's stated reason was a mere pretext for unlawful discrimination. These issues were previously discussed and determined in the district court action and again on appeal, wherein Dictaphone was granted summary judgment on plaintiff's age and sex discrimination claims. With regard to plaintiff's demotion, the district court stated:
 {¶ 47} "Even if plaintiff satisfies the prima facie threshold, his claim for age discrimination with respect to his demotion cannot survive summary judgment. Ms. McClure [nka Carpenter], Ms. Malone and Mr. Wallace all aver that they directly observed or received reports of plaintiff harassing subordinates. Moreover, Mr. Nassef's investigation determined that plaintiff created a hostile and intimidating work environment. Even if, as plaintiff suggests, Mr. Nassef's investigation was not objective, the February 7, 1992 letter from plaintiff that Ms. Malone attaches to her affidavit demonstrates an insubordinate and intimidating attitude on the part of plaintiff. * * * Further, the conclusion reached by the Nassef investigation is buttressed by plaintiff's letter of February 7, 1992, as well as the affidavit of Mr. Wallace, who verifies that he complained to Malone of plaintiff's harassment of other sales representatives. Defendants have therefore produced evidence that they had legitimate, non-discriminatory reasons for discharging plaintiff." Bush v. Pitney Bowes Corp. (July 9, 1997), United States District Court, Southern District of Ohio, No. C-2-95-361, at 12.
 {¶ 48} With regard to plaintiff's termination, the district court averred:
 {¶ 49} "The defendants must therefore demonstrate that there were legitimate non-discriminatory reasons for the discharge. In discharging plaintiff, Dictaphone relied primarily upon the report of Dr. Sokolov and reports of plaintiff's continued harassing behavior. Dr. Sokolov determined that `in a practical sense, [plaintiff] probably cannot function in this role in the context of a corporate employee at Dictaphone.' Sokolov Report, at 14. Plaintiff does not dispute that defendants gave him every opportunity to challenge Dr. Sokolov's findings and recommendations with a report from a psychiatrist of plaintiff's choice at the expense of the defendant. Plaintiff never took advantage of that opportunity. No medical records were presented to the defendant by the plaintiff prior to his discharge. The Court concludes, upon review of the evidence, that defendants have satisfied their burden of production under the McDonnell Douglas shifting test by producing evidence that they had legitimate, non-discriminatory reasons for discharging the plaintiff.
 {¶ 50} "The burden now shifts to the plaintiff to demonstrate that defendants' reasons for the discharge was a mere pretext for unlawful discrimination. In attempting to do so, plaintiff relies upon the affidavit of Dr. Gerlach.[5]
 {¶ 51} "The fact that Dr. Gerlach disputes the medical conclusions of Dr. Sokolov does not demonstrate that defendants' reasons were pretextual. Defendants never had the benefit of Dr. Gerlach's conclusions at the time they made their decision. Instead, at the time of the discharge, the defendants had the unrefuted, unchallenged report of Dr. Sokolov. The plaintiff was invited to submit his own medical evidence. In the absence of the submission of countervailing medical evidence, the defendant could reasonably rely upon the report of Dr. Sokolov. * * *" Id. at 13-14.
 {¶ 52} On appeal, the Sixth Circuit Court of Appeals agreed that Dictaphone met its burden of showing a legitimate, nondiscriminatory reason for its employment actions:
 {¶ 53} "Because Bush made out a prima facie claim, Dictaphone was required to show a legitimate, non-discriminatory reason for the discharge. Dictaphone met this burden by relying on the professional judgments of a psychiatrist and a psychologist, both of whom concluded that Bush was not fit to continue in his position. The psychologist, Dr. Kocan, specifically recommended that `caution' be exercised in dealing with him. Bush does not dispute that Dictaphone gave him every chance to challenge these findings, even offering to pay for an examination with a psychologist or psychiatrist of [plaintiff's] own choosing. But Bush chose not to avail himself of that opportunity. The findings of Drs. Kocan and Sokolov are therefore unchallenged in the record. Dictaphone has therefore met its burden of showing a legitimate, non-discriminatory reason for the discharge.
 {¶ 54} "* * *
 {¶ 55} "Once the employer has presented a legitimate, non-discriminatory reason for the discharge, the plaintiff must show that the proffered reason is pretextual. * * * In an attempt to do so, Bush relies on the affidavit of a psychiatrist, Dr. Gerlach, who Bush retained. Dr. Gerlach's affidavit, however, does not materially advance Bush's case. As the district court noted, Bush does not allege that Dictaphone had access to Dr. Gerlach's opinion when it made its decision to terminate him. As a result, Dr. Gerlach's affidavit is immaterial to the establishment of pretext, and Bush is left to rely on his own unsupported allegations.
 {¶ 56} "* * *
 {¶ 57} "* * * Having carefully reviewed each of these allegations, we find that none of them, either individually or collectively, are sufficient to establish a material issue of fact for trial. * * *" Bush, supra, at 368-369.
 {¶ 58} These determinations raise the issue of collateral estoppel, or issue preclusion. In Fort Frye Teachers Assn. v. State Emp. Relations Bd. (1998), 81 Ohio St.3d 392, the Ohio Supreme Court explained the legal doctrine of res judicata, which consists of two related concepts-claim preclusion and issue preclusion:
 {¶ 59} "* * * [T]he claim preclusion concept holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. [Grava v. Parkman Twp. (1995),73 Ohio St.3d 379], at syllabus.
 {¶ 60} "The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. * * * While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." Id. at 395.
 {¶ 61} That Dictaphone set forth a legitimate, nondiscriminatory reason for its employment actions and that plaintiff failed to establish that Dictaphone's stated reason was a pretext for discrimination were facts actually and directly at issue in the federal action and were passed upon and determined both by the district court and the court of appeals. Plaintiff contends that the doctrine of collateral estoppel does not bar him from relitigating these issues because this court already determined that the doctrine of res judicata did not bar him from bringing a handicap discrimination claim. Plaintiff's contention is unpersuasive. In our prior decision, we held that plaintiff's previous claims of age and sex discrimination, asserted in his federal action, did not bar him from asserting a handicap discrimination claim when the federal court refused to allow plaintiff to amend his federal action to add the handicap claim when, after its grant of summary judgment on all of plaintiff's federal question claims, the court lacked supplemental jurisdiction to hear that claim. Nevertheless, even though res judicata did not prevent plaintiff from litigating a handicap discrimination claim, collateral estoppel bars him from litigating the same issues that were decided by the court in the prior federal action, a matter not addressed in our prior opinion.
 {¶ 62} Plaintiff further contends that collateral estoppel does not apply because the prior federal action did not involve the same parties or their privies because Agin was not a party to the federal lawsuit. We reject this argument. "In determining whether there is privity of parties, `a court must look behind the nominal parties to the substance of the cause to determine the real parties in interest.' " Fort Frye, supra, at 396, quoting Trautwein v. Sorgenfrei (1979),58 Ohio St.2d 493, 501. In the instant case, Agin is named as a defendant, not in his individual capacity, but in his corporate capacity as plaintiff's supervisor at the time he was terminated. Plaintiff does not allege that Agin took any action against him beyond the scope of his duties as District Manager of Dictaphone. Moreover, in determining whether Dictaphone unlawfully discriminated against plaintiff, the federal courts necessarily would have reviewed and considered Agin's conduct, as all of the evidence concerning Agin's role in plaintiff's termination was before the federal courts.
 {¶ 63} Plaintiff also argues that collateral estoppel does not apply because plaintiff is pursuing a different cause of action (handicap discrimination) in the instant case than that raised in the federal action (age and sex discrimination). We find the distinction to be of no consequence. "[U]nder the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." Id. at 395. The evidence relied upon by the federal courts in determining that defendant established a legitimate, nondiscriminatory reason for its employment actions and that plaintiff failed to demonstrate that reason was pretextual applies with equal force to plaintiff's handicap discrimination claim. Indeed, the Sixth Circuit determined that plaintiff's sex discrimination claim failed for the same reasons that his age discrimination claim failed; i.e., he failed to demonstrate that Dictaphone's proffered nondiscriminatory reason for discharging him was pretextual.
 {¶ 64} In short, we find that even if plaintiff satisfied the prima facie threshold on his claim of handicap discrimination with respect to his demotion and/or termination, he cannot survive summary judgment, as the issue of whether defendants produced evidence of a legitimate, nondiscriminatory reason for its employment actions and whether plaintiff established that such reason was a mere pretext for unlawful discrimination was determined in defendants' favor in the federal action; thus, plaintiff is barred from relitigating those issues under the doctrine of collateral estoppel. Accordingly, the first assignment of error is overruled.
 {¶ 65} By the second assignment of error, plaintiff contends that the trial court abused its discretion in overruling as moot his motion to strike declarations and several exhibits attached to defendants' motion for summary judgment and in failing to consider plaintiff's reply in support of his motion.
 {¶ 66} On September 8, 2000, plaintiff filed a motion to strike five declarations and several accompanying exhibits which were attached to defendants' July 5, 2000 motion for summary judgment. The declarations and exhibits were originally submitted by Dictaphone in connection with plaintiff's federal sex and age discrimination claims. Plaintiff contended that the declarations were not evidence of the type to be considered in a summary judgment proceeding, as they were not sworn before a notary public, were not affidavits, and were not based upon personal knowledge. Plaintiff further contended that the exhibits attached to the declarations were also inadmissible, as they were likewise unsworn.
 {¶ 67} In response to plaintiff's motion, defendants submitted the sworn affidavits of the five individuals whose declarations were attached to the motion for summary judgment. These affidavits were substantially similar in substance to the previously submitted declarations. Defendants urged the court to exercise its discretion and consider the admittedly untimely filed affidavits.
 {¶ 68} Plaintiff filed a reply in which he argued that the newly filed affidavits, while notarized, did not constitute evidence of the type to be considered in a summary judgment proceeding because the affiants did not indicate that they were testifying based upon "personal knowledge" as required by Civ.R. 56(E). Plaintiff also argued that the affidavits were filed too late. Plaintiff's reply was time-stamped September 29, 2000, at 1:56 p.m.
 {¶ 69} At 12:19 p.m. on September 29, 2000, the trial court filed a decision and entry overruling as moot plaintiff's motion to strike. The court determined that it would consider the affidavits in deciding the motion for summary judgment. In support of its determination, the court noted that the affidavits were identical in substance to the unsworn declarations and, because plaintiff had already addressed the substance of the declarations/affidavits in his memorandum contra, plaintiff would not be prejudiced by their consideration.
 {¶ 70} Plaintiff contends that the trial court abused its discretion in ruling on his motion to strike before considering plaintiff's reply, in considering untimely filed affidavits, and in considering affidavits not based upon personal knowledge.
 {¶ 71} Preliminarily, we note that "[t]he term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *" In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157. When applying the abuse of discretion standard, a reviewing court may not merely substitute its judgment for that of the trial court. Id. at 137-138. Applying this stringent review, we can discern no abuse of discretion here.
 {¶ 72} We turn first to plaintiff's contention regarding the affiants' alleged lack of personal knowledge. Evid.R. 602 requires lay witnesses to have personal knowledge of the matters about which they testify. Similarly, Civ.R. 56(E) requires that affidavits filed in support of or in opposition to summary judgment must be made on personal knowledge. State ex rel Cassels v. Dayton City School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 223. "Personal knowledge" has been defined as "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." Black's Law Dictionary (7 Ed.Rev. 1999) 877. In Brannon v. Rinzler (1991),77 Ohio App.3d 749, 756, the court defined "personal knowledge" as "knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay. * * *" An affidavit without an averment of personal knowledge must demonstrate personal knowledge specifically. Equitable Assurance Corp. v. Kuss Corp. (1984), 17 Ohio App.3d 136, 138.
 {¶ 73} None of the affidavits in question specifically aver that the affiants' statements were based on personal knowledge. However, it has been held that personal knowledge may also be inferred from the contents of an affidavit. Beneficial Mortgage Co. v. Grover (June 2, 1983), Seneca App. No. 13-82-41. In that case, the court inferred than an affiant had personal knowledge of the facts contained in his affidavit where he stated that he was the manager of the bank that issued the note in question, that he had direct supervision of payments on the note and custody of all records respecting it, and where his signature appeared on the note as a witness.
 {¶ 74} As in Grover, we find that personal knowledge may be inferred from the contents of the challenged affidavits. In her affidavit, Carpenter avers that she was Vice President, Human Resources for Dictaphone during the time period in question. Malone states in her affidavit that she was Vice President, Sales for Dictaphone from August 1989 until February 1994 and, in that position, was responsible for managing plaintiff. Nassef avers that he was the Corporate Ombudsman for Pitney Bowes, the parent company of Dictaphone, from February 1988 to October 1996 and was a member of the Pitney Bowes PCI Team that considered plaintiff's case. All three set forth detailed, chronological accounts of the events leading up to, and including, plaintiff's demotion and/or termination, including their direct involvement in those employment actions. In his affidavit, Wallace states that he was a sales representative for Dictaphone from January 1988 until March 1993, reporting directly to plaintiff. He further avers that plaintiff's harassment of the sales representatives became such a concern that they asked him to report plaintiff's behavior to Malone. Rosalind M. Gordon avers in her affidavit that she has served as Executive Director and Labor and Employee Relations Counsel since January 1993 and was a member of the PCI Team that considered plaintiff's case.
 {¶ 75} In our view, the nature of the facts contained within these affidavits, together with the identity of the affiants and their admitted involvement in the employment actions taken against plaintiff, creates a reasonable inference that the affiants had personal knowledge of the facts contained therein. Accordingly, we conclude that personal knowledge may be inferred from the contents of the affidavits, and the trial court did not err in considering them in deciding the motion for summary judgment.
 {¶ 76} Plaintiff next contends that the trial court abused its discretion in considering the affidavits because they were not timely filed. A trial court's decision to consider untimely filed affidavits is well within its discretion and such decision will not be reversed absent an abuse of that discretion. Clodgo v. Kroger Pharmacy (Mar. 18, 1999), Franklin App. No. 98AP-569. The record indicates that defendants first submitted the evidence contained within the affidavits in the form of unsworn declarations. After plaintiff filed a motion to strike the unsworn declarations, defendants filed the affidavits, albeit untimely. In determining that it would consider the untimely filed affidavits, the trial court noted that the affidavits were identical in substance to the unsworn declarations and, because plaintiff had already addressed the substance of the declarations/affidavits in his memorandum contra, he would not be prejudiced by their consideration. Plaintiff offers no evidence to persuade this court that the trial court abused its discretion in so finding.
 {¶ 77} Finally, plaintiff contends that the trial court abused its discretion in failing to consider the arguments raised in his reply brief. It appears from the time stamps on the reply brief and the trial court's judgment entry that the trial court may not have considered plaintiff's reply brief. However, in light of the fact that we have already determined that the affidavits in question were based upon personal knowledge, and that the trial court did not abuse its discretion in considering the untimely filed affidavits, failure, if any, of the court to consider plaintiff's reply brief is harmless error. See Civ.R. 61. Plaintiff's second assignment of error is overruled.
 {¶ 78} By the third assignment of error, plaintiff contends that the trial court abused its discretion in overruling his March 2, 2000 motion to conduct telephone depositions of Wallace and Nassef. Plaintiff contended in the trial court that because the witnesses were available for deposition on the same date, but in different parts of the country (Wallace in Boulder, Colorado and Nassef in Washington, D.C.), the taking of telephonic depositions would serve to curtail further delays in the deposition process and reduce the cost of discovery. Defendants filed a memorandum contra, arguing that plaintiff failed to sufficiently justify the taking of depositions by telephone. Defendants cited federal case law for the proposition that inconvenience and expense are, without more, insufficient to demonstrate a need for telephonic depositions. Defendants further contended that because the depositions would likely involve questions regarding numerous exhibits and documents, conducting them via telephone would create a real likelihood of confusion and, therefore, prejudice. In reply, plaintiff cited federal case law for the proposition that courts generally permit and encourage telephonic depositions and that in this case, telephonic depositions would reasonably ensure accurate, trustworthy, and non-prejudicial testimony. Plaintiff further contended that since the witnesses were experienced business people, they were accustomed to conducting important business via telephone.
 {¶ 79} By decision and entry filed April 19, 2000, the trial court overruled plaintiff's motion, stating:
 {¶ 80} "* * * The confusing procedural and factual history of this case only emphasizes the complexity of the discovery process and the likelihood of confusion on the part of witnesses and counsel. While the Court acknowledges that undue expense and needless delay are to be avoided wherever possible, it is also of the mind that the accuracy and reliability of testimony are vital to the fairness of the proceedings. These qualities might be compromised by a telephonic deposition in a case such as this one, especially given the complexity of the legal arguments and the number of documents and exhibits that might eventually come into issue."
 {¶ 81} Preliminarily, we note that absent an abuse of discretion, a reviewing court must affirm a trial court's disposition of discovery issues. State ex rel. The V. Companies v. Marshall (1998),81 Ohio St.3d 467, 469. "An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable decision." Id.
 {¶ 82} Depositions upon oral examination conducted by telephone are governed by Civ.R. 30(B)(6), which provides:
 {¶ 83} "The parties may stipulate in writing or the court may upon motion order that a deposition be taken by telephone. For purposes of this rule, Civ.R. 28, and Civ.R. 45(C), a deposition taken by telephone is taken in the county and at the place where the deponent is to answer questions propounded to the deponent."
 {¶ 84} There is a scarcity of controlling authority in Ohio regarding this rule. In Insulation Unlimited Inc. v Two J's Properties, Ltd. (1998), 95 Ohio Misc.2d 18, 22, the court ordered the parties to investigate and discuss the logistics of conducting a telephonic deposition of one of the defendants in the case, with the purpose of possibly entering into a stipulation. The court stated that if the parties could not reach an agreement regarding the logistics of a telephone deposition, the plaintiff could file a motion requesting the court to order a telephonic deposition. Citing Jahr v. IU Internatl. Corp. (M.D.N.C. 1986), 109 F.R.D. 429, the court stated: "[t]o prevail on the motion the movant needs to demonstrate a legitimate reason justifying the procedure. Upon such a showing the burden shifts to the respondent to demonstrate why a telephone deposition will not suffice." Id. at 29.
 {¶ 85} In the instant case, we find that plaintiff set forth a legitimate reason justifying the taking of telephonic depositions-the savings of time and costs. The burden then shifted to defendants to demonstrate why a telephone deposition would not suffice. Here, defendants argued that the depositions should not be taken by telephone because of the complexity of the case, the likelihood of witness and counsel confusion, and the number of documents that might come into issue. While the trial court acknowledged that undue expense and needless delay should be avoided whenever possible, the court also recognized that the accuracy and reliability of witness testimony was vital to the fairness of the proceedings. Upon review of the record and the arguments presented by counsel, we cannot say that the trial court abused its discretion in denying plaintiff's motion. Accordingly, the third assignment of error is overruled.
 {¶ 86} Having overruled each of plaintiff's three assignments of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and BROWN, JJ., concur.
[1] At all times pertinent to the instant appeal, Kim Carpenter was known as "Kim McClure." Her affidavit is signed with the surname Carpenter. Accordingly, we will use that surname throughout this opinion.
[2] Pitney Bowes is the former corporate parent of Dictaphone. It is not a party to this appeal.
[3] Dictaphone filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court, District of Delaware, on November 29, 2000; accordingly, Dictaphone is discharged, pursuant to Section 1141, Title 11, U.S. Code, from all potential liability for debts incurred prior to the petition date, including the matters that are the subject of the instant litigation. As such, Dictaphone is not a party to this appeal. Plaintiff's action remains viable, however, against Agin.
[4] Ohio's anti-discrimination statutes were amended March 17, 2000, to refer to "disability" rather than "handicap." At the time the instant case arose, the statues utilized the term "handicap."
[5] Plaintiff submitted the May 21, 1997 affidavit of Dr. Charles Gerlach, a psychologist who began treating plaintiff in January 1993. Dr. Gerlach disagreed with Dr. Sokolov's diagnosis of narcissistic personality disorder. According to Dr. Gerlach, plaintiff was suffering from major depression which was caused solely by his demotion in January 1993. Dr. Gerlach further averred that by the summer of 1993, as a result of being treated with anti-depressant medication, plaintiff developed a bipolar mood disorder and was subsequently treated for that condition.